UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE DREW,

        Plaintiff,                    No. 2:12-cv-10411

vs.                                         Hon. Gerald E. Rosen

MICHAEL MILKA,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

On January 9, 2012, Plaintiff Terrance Drew filed this 42 U.S.C. § 1983 complaint in the Wayne County Circuit Court, alleging that Defendant Michael Milka used excessive force in arresting him on October 20, 2009. Plaintiff asserts that Defendant ordered his K-9 police dog -- Xanto -- to bite him, without warning, after he was handcuffed, and contends that this action violates the Fourth Amendment and voids Defendant's qualified immunity. Defendant removed the case to this Court on January 31, 2012, and filed the instant Motion for Summary Judgment on September 13, 2012.

1

## II. FACTUAL BACKGROUND

On October 20, 2009, Cpl. Michael Milka -- an employee of the City of Taylor Police Department -- and his K-9, Xanto, were asked to assist the Downriver Area Narcotics Organization ("DRANO") with the arrest of Plaintiff Terrance Drew for drug trafficking.  Prior to the arrest, Defendant was informed by DRANO officers that Plaintiff had an extensive criminal history of felony drug charges and resisting arrest.  Following this briefing, Defendant and DRANO officers followed Plaintiff from his home to his brother's Allen Park apartment, the suspected hub of Plaintiff's drug dealing activity.  Upon arrival, DRANO surveillance observed Plaintiff entering his brother's apartment with his four-year-old daughter.  He stayed at the apartment for a short period of time before re-emerging.  Although Defendant claims that Plaintiff was alone, both Plaintiff and the DRANO surveillance reports indicate that Plaintiff was still accompanied by his daughter when he left the apartment.

### A.     Defendant's Recollection of Events

Defendant's and Plaintiff's recollection of events differ in a number of material respects.  According to Defendant, when he and the DRANO officers observed Plaintiff leave his brother's apartment, they approached him, identified themselves as police officers, and ordered Plaintiff to get on the ground.  Rather

than comply with the officers' commands, however, Plaintiff reached into his pocket, took out his cell phone, and began walking backwards and away from Defendant Milka. Dep. Milka 39:7-20. Plaintiff turned around -- facing away from Defendant -- and was immediately engaged by another officer, who grabbed Plaintiff around his head and shoulders, but was only able to force him into a bent-over position, rather than take him to the ground. Milka Dep. 41:20-42:10.

Defendant engaged Plaintiff at this point, attempting to tackle him around his lower body. *Id.* at 44:6-8. During this exchange, Defendant repeatedly told Plaintiff to get on the ground. He has no recollection of Plaintiff saying anything. The officers eventually got Plaintiff to the ground, but were still unable to get his hands behind his back to handcuff him. *Id.* at 47:17-24. Defendant warned Plaintiff several times that Xanto would be ordered to bite him if he did not stop resisting. *Id.* at 53:1-10. When Plaintiff continued to struggle, Defendant ordered Xanto to bite Plaintiff, which continued until Plaintiff stopped resisting and was handcuffed. *Id.* In all, Defendant estimates that the dog bite took "less than a minute" and asserts that he called off the dog as soon as Plaintiff was subdued. The incident reports of the other officers on the scene tell substantially the same story.[1]

---

[1] Def.'s Mot. Summ. J., Ex. B, Troup Investigator's Report ("Ofc. Milka and his K-9 subdued Def. T. DREW and because of noncompliance, he was bitten by the K-9 to gain his cooperation so officers could detain and effectively arrest him.");

3

B.     Plaintiff's Recollection of Events

Plaintiff's testimony about these events is different.  Upon leaving his brother's apartment, Plaintiff claims that he saw a man in a ski mask and -- fearing that he was about to be robbed -- took out his phone to call his brother for help.  Drew Dep. 200:18-23.  He panicked and began walking more quickly towards his truck, but never actually made the call.  Drew Dep. 202:6-24.  It was at this point that Plaintiff claims to have first noticed a group of uniformed police officers running towards him.  He realized they were police officers and recalls that he stopped walking once he determined they were not a threat.  Drew Dep. 204:15-22, 216:17-19.

---

Def.'s Mot. Summ. J., Ex. G, Milka Incident Report ("OFC advised subject to stop resisting or the dog would be deployed for a bite.  Subject continued to struggle with OFC's at which time OFC gave K-9 Xanto his bite command to assist OFC's in subduing subject.  K-9 Xanto engaged subject biting him on the left lower leg / calf area.  Subject continued to resist bringing his left arm behind his back.  OFC advised subject the dog would be called off when he complied to OFC's commands to bring his hands behind his back."); Def.'s Mot. Summ. J., Ex. I, Troup Incident Report ("Milka and his K-9 subdued suspect DREW and because of noncompliance, he was bitten by the K-9 to gain his cooperation so officers could detain and effectively arrest him."); Def.'s Mot. Summ. J., Ex. J, Mydlarz Supp. Incident Report ("Once on the ground, DREW was resisting as he tried to pull his arms away and push himself up or stand up.  During the struggle to gain control of DREW's arms, Cpl. Milka used K-9 Xanto to apprehend DREW at that time DREW became compliant and was handcuffed."); Def.'s Mot. Summ. J., Ex. K, Thorburn Supp. Incident Report ("Cpl. Milka was also trying to gain control of DREW's left arm with no success.  Undersigned officer became aware that K-9 Xanto had been used to apprehend DREW after which DREW became compliant.  He was then cuffed and secured.").

However, Plaintiff claims that once he stopped walking, an officer ran up to him and struck him in the head with a flashlight, causing him to "los[e] consciousness for a minute." Drew Dep. 216:12-22. It is unclear exactly when and for how long Plaintiff "lost consciousness," but he remembers being grabbed "everywhere" by officers who commanded him to "Stop resisting," to which he replied, "I'm not resisting." *Id.* at 221:21, 222:6-17. Plaintiff is "pretty sure" that the officers "flipped me" to the ground, where he continued to protest that he was not resisting arrest. *Id.* at 221:4-11. While he admits that he was "wiggling around" and moving while on the ground, he claims that he willingly put his hands behind his back, did not attempt to stand-up or get off the ground, and "willingly did everything" the officers requested. *Id.* at 236:1-237:16.

At some point during this encounter, Plaintiff became aware that he was being bitten by the dog. However, it is unclear when the dog first attacked. At his deposition, Plaintiff was questioned repeatedly regarding when the dog began to bite him.

> Q: "Were you handcuffed before or after you were getting bit --"
>
> A: "I don't know. I just remember the dog biting me when I was in handcuffs."

Drew Dep. 225:8-11.

* * * *

5

Q: "Were you being bitten during the time that the officers were trying to handcuff you?"

A: "No."

Q: "So, you are saying here today that you -- all the biting was after you were handcuffed?"

A: "Yes."

Q: "The dog didn't bite you before, the dog didn't bite you during?"

A: "No."

Drew Dep. 233:5-13.

However, when pushed on that answer, Plaintiff stated as follows:

A: "I don't know how to answer your question 'cause I was getting bit when I was in handcuffs. So, if I was getting bit before that I don't -- I don't know. All I remember is the dog gnawing at me when I was in handcuffs."

Q: "So, you could have been being bit before you were in handcuffs as well?"

A: "I don't -- I wouldn't know, I don't know. I don't know. I don't know --"

Q: "And you wouldn't --"

> A: "I wasn't conscious. I wasn't conscious -- I just don't remember. I don't know."
>
> Q: "So, you could have been being bit before you were handcuffed and you could have been bit during the handcuffing --"
>
> A: "I don't --"
>
> Q: "-- and after the handcuffing. Is that a fair statement?"
>
> A: "The only state -- only fair statement I can give you is I know I was getting bit when I was in handcuffs."
>
> Q: "Okay. But you don't remember if you were being bit before you were in handcuffs. Is that a fair statement?"
>
> A: "I guess it would be. I don't know."
>
> Q: "And you don't remember if you were getting bit during the handcuffing, too. Is that a fair statement?"
>
> A: "All I know when I was in handcuffs that dog was biting me."

Drew Dep. 241:1-242:1.

\* \* \* \*

> Q: "When they're handcuffing you, when they're trying to get your handcuffs on, could you have been being bit at that time, too?"
>
> A: "I don't know."

> Q: "Okay.  And you do know that you were bitten after the time that you were cuffed?"
>
> A: "I know I was getting bit while I was in handcuffs."
>
> Q: "Right.  But in terms of before the handcuffing and during the handcuffing when they're getting the handcuffs on you, you don't know one way or another.  Is that a fair statement?"
>
> A: "I just said I don't really know, ma'am.  All I know is I was getting bit while I was in cuffs."

Drew Dep. 242:22-243:10.

Additionally, Plaintiff could not provide any information on how long the dog was biting his leg after he was in the handcuffs.  Drew Dep. 245:4-7 ("Q: Do you know how long the dog had a hold of you for or do you not?  A:  I don't know.  I wish I did time it, but I didn't.  I don't know, ma'am."); Drew Dep. 239:16-18 ("the dog was on me for a nice minute.  So, I don't -- and I can't recall how long he was on me.").  However, Plaintiff admits that he was wiggling and moving his body while he was on the ground.  Drew Dep. 236:1-18.  Plaintiff also claims that he did not hear Defendant warn him that the dog would be deployed if he did not stop resisting, but does not claim that such a warning was not given.  Drew Dep. 238:7-9 ("Q: Are you saying that wasn't said or are you saying it may have been said but you didn't hear it?  A: I'm telling you I didn't hear it.").

8

## C. Plaintiff's Allegations and Defendant's Motion for Summary Judgment

Plaintiff alleges that Defendant exercised excessive force at three points during the arrest. First, by ordering the bite after Plaintiff was subdued and handcuffed. Second, by allowing the bite to continue for an unreasonable period of time after he was subdued. And third, by failing to warn Plaintiff that his refusal to cooperate would result in a dog bite.

Defendant has moved for summary judgment, claiming that he acted reasonably under the circumstances and is entitled to qualified immunity. Plaintiff argues that his deposition testimony that he was not bitten by the dog until after he was handcuffed creates a genuine issue of material fact on an issue necessary to determine whether Defendant violated Plaintiff's constitutional rights, and is therefore sufficient to defeat Defendant's motion for summary judgment.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). However, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). Rather, "there must be evidence on which the jury could reasonably find for the non-movant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," then no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Analysis**

In considering Plaintiff's § 1983 claim alleging excessive force, the Court must determine (i) whether the officer's use of force violated the constitution, and (ii) if so, whether the officer deserves qualified immunity because he did not violate clearly established federal law. *Wysong v. City of Heath,* 260 F. App'x 848, 854 (6th Cir. 2008). Both of these questions turn on whether Plaintiff had been subdued or was resisting arrest when Defendant ordered the dog to bite him.

**1. Did Defendant's Use of Force Violate the Constitution?**

Allegations of excessive force are analyzed under the Fourth Amendment's "objective reasonableness" test, in which reasonableness "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 394 (1989). This is a fact-specific inquiry that considers "(i) the severity of the crime at issue; (ii) the threat of immediate danger to the officers or bystanders; and (iii) the suspect's attempts to resist arrest or flee." *Id.* at 396. Further, the inquiry "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Sixth Circuit case law demonstrates that even when a suspect simply "twisted and turned some," police officers were justified in using force to subdue and arrest him. *Id.* at 943. However, force can easily be excessive if the subject is compliant, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004), and there is no government interest in striking or ordering a dog bite on someone who is not resisting arrest or attempting to flee. *See Wysong*, 260 Fed. App'x at 855 ("There is no government interest in striking someone who is neither resisting nor trying to flee."); *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (unreasonable to tackle a cuffed and compliant suspect); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding that a blow to a cuffed, unresisting suspect is unreasonable). Thus, to defeat Defendant's motion for summary judgment, Plaintiff must raise a genuine issue of material fact on the questions of: (i) whether he was resisting arrest at the time the dog bite was ordered; (ii) whether the dog was allowed to continue biting him after he was subdued and compliant; or (iii) whether he was warned prior to the dog bite being ordered.

Plaintiff's testimony -- viewed in the light most favorable to Plaintiff -- suggests that he did not resist the officers' attempt to take him into custody. According to his testimony, he was simply standing still with his daughter when police officers ran up, struck him in the head, and tackled him to the ground. Despite his protests that he was not resisting arrest and his claim that he

12

"willingly" cooperated with officers' order that he place his hands behind his back, the arresting officers twisted his arms and ordered a dog bite. A reasonable jury could accept Plaintiff's account as true despite Defendant's contrary testimony, and under these facts Defendant used excessive force in ordering the dog bite, irrespective of its timing.

While it is true that this analysis is complicated by Plaintiff's asserted loss of consciousness -- which potentially suggests that he may have resisted arrest and have no memory of it -- his deposition testimony, in its totality, seems to cover the entire arrest. Plaintiff recalls being struck with the flashlight, being flipped to the ground, telling police that he was not resisting while on the ground, and being bitten by the dog. Viewing these facts in his favor, his loss of consciousness could simply mean that he passed out at some point during the arrest -- in which case he could not have been resisting -- or that he was simply too caught up in the moment to remember such details as how long the dog bit him.

Accepting as true Plaintiff's claim that he did not resist arrest -- as we must for summary judgment purposes -- it is difficult to conceive of a law enforcement interest that is served by ordering a dog bite on a compliant arrestee. *See Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("the decision to punch repeatedly an unarmed suspect who asserts that he never so much as lifted his hands amounts to

13

little more than the wanton infliction of pain."). Thus, under Plaintiff's view of the facts, Defendant violated his right to be free from excessive force.

### 2. Is Defendant Protected by Qualified Immunity?

Police officers are entitled to qualified immunity unless their conduct violates "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (internal quotations omitted).

It is clear that ordering a dog bite on a compliant arrestee violates a clearly established constitutional right. As the Sixth Circuit stated in *Wysong*, "[t]he same cases holding that police may not use force on a subdued, non-resisting subject hold that the right to be free from physical force when one is not resisting the police is a clearly established right." 260 Fed. App'x at 848 (citing *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) and *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)). Just as the government has no law enforcement interest in ordering a dog bite on someone who is neither resisting arrest nor trying to flee, there is a clearly established constitutional right to be free from dog bites

when one is neither resisting arrest nor attempting to flee. Accepting Plaintiff's facts for purposes of this motion, it is therefore clear that Defendant violated Plaintiff's clearly established constitutional rights. Therefore, the qualified immunity doctrine does not prevent Plaintiff from proceeding on his excessive-force claim.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2013      s/Gerald E. Rosen
GERALD E. ROSEN
CHIEF, U.S. DISTRICT COURT

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 7, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, 313-234-5135